UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X   Docket No.
PERCY FORREST,

                                 *Plaintiff,*        **COMPLAINT**

    -against-

CAPITAL LOGISTICS, LLC,        **PLAINTIFF DEMANDS**
                                                                                 **A TRIAL BY JURY**

                                 *Defendant.*
------------------------------------------------------------X

        Plaintiff PERCY FORREST ("Plaintiff"), by his attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York Human Rights Law, 15 N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et. seq.* ("NYCHRL"). Specifically, Plaintiff seeks damages to redress the injuries he suffered as a result of being **discriminated against, subjected to a hostile work environment and ultimately terminated on the basis of his race (Black) and in retaliation for complaining of discrimination.**

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1981, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as Defendant resides within the Southern District of New York or the acts complained of occurred therein.

1

5. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")    12/13/2021    ; (b) receiving a Notice of Right to Sue from the EEOC on    06/30/2022    ; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

6. Plaintiff is a Black male resident of the State of New York, Bronx County.

7. Upon information and belief, Defendant CAPITAL LOGISTICS, LLC ("CAPITAL LOGISTICS"), is a domestic business corporation, organized and existing under the laws of the State of New York.

8. Upon information and belief, Defendant CAPITAL LOGISTICS employs fifteen or more employees.

## MATERIAL FACTS

9. Plaintiff began working for Defendant CAPITAL LOGISTICS in or around November 2020 as an "Operations Associate."

10. Plaintiff's expected salary for 2021 was approximately $62,500.00, in addition to potential bonuses that could amount to around $5,000.

11. Plaintiff was initially hired by Defendant's Director of Operations TJ Chittenden

("Chittenden"). Throughout the hiring process Plaintiff discussed with Chittenden that he had pre-planned vacation throughout the next year. Chittenden said that Plaintiff's vacation requests would not be a problem, and that after onboarding he would let Plaintiff know how to properly submit the requests.

12. All interviews and training with Defendant CAPITAL LOGISTICS were in-person, so everyone involved in hiring or training Plaintiff knew his race.

13. Around a month after Plaintiff's hiring, Plaintiff asked Chittenden how to submit his vacation requests for 2021 and was advised to do so in the Bamboo HR system.

14. In or around January 2021, Plaintiff submitted his planned PTO using his vacation days for the calendar year. It was approved by Chittenden in the Bamboo HR system, and Plaintiff received a notification from the system stating such.

15. In or around February or March 2021, a trucker working for "Point Logistics" called Plaintiff a nigger during a routine phone call and said he had no interest in speaking with "people like you," which Plaintiff took as a reference to his race. Plaintiff immediately complained of this treatment to Chittenden, who told Plaintiff to ignore it and that Defendant could not stop working on any accounts with Point Logistics because Defendant needed their business and in "this industry" (transportation/trucking) "people still believe in old values."

16. In or around March 2021, Plaintiff met with Amanda Samlal ("Samlal") a "Human Resource Manager" with the Defendant. Samlal informed Plaintiff that he had already requested to use all of his allotted 10 PTO days for the calendar year and most of his sick days, and that if he was out any other days throughout the calendar year his pay would be docked. Plaintiff was shocked at Samlal's aggressive interest in his PTO days, which he had requested for pre-planned vacation and had not yet encountered any issues with that

would require counseling.

17. During his time working at Defendant CAPITAL LOGISTICS, the members of Plaintiff's immediate team were primarily non-Black. Plaintiff began to feel that his non-Black team manager Alex Masouras ("Masouras") was being overly-critical of his performance and giving Plaintiff unwarranted negative feedback as compared to his non-Black peers. Masouras would often claim that a task was not done or done incorrectly when this was not the case, and Plaintiff have to direct Masouras to where it was and explain why it was correct. Plaintiff became frustrated, because his non-Black colleagues Peter Pichardo ("Pichardo") and Eric (last name unknown), who held the same title as Plaintiff, received friendly treatment from Masouras and upon information and belief, did not receive such close criticism of their performance.

18. Further, Eric joined the team after Plaintiff, and Plaintiff was dismayed to see Eric welcomed and treated favorably by Masouras and Pichardo in a way Plaintiff never was.

19. Pichardo, who could observe the discriminatory way Masouras treated Plaintiff, also became hostile towards Plaintiff. In or around May 2021, Masouras was out on vacation for two weeks and the team had no manager, and Chittenden instructed Pichardo and Plaintiff to equally split the work that came in while Masouras was out. Instead, Pichardo tried to assign work to Plaintiff and order him to do tasks, despite them holding the same title. Plaintiff felt degraded and disrespected, and was forced to work longer hours than he regularly did due to the large workload Pichardo pushed onto him.

20. Although at first Plaintiff tried to avoid perpetuating any workplace conflict, Plaintiff eventually complained to Chittenden concerning the discriminatory treatment. Chittenden asked if Plaintiff and Pichardo could resolve the complaint between themselves. Although Plaintiff attempted to speak to Pichardo about how Pichardo's hostile treatment

of Plaintiff was affecting Plaintiff's work environment, Pichardo was dismissive. Pichardo told Plaintiff that he did not have time to discuss Plaintiff's feelings and that they were of no importance to him.

21. When Masouras returned from vacation, his hostility towards Plaintiff became unbearable, and his disparaging remarks and disparate treatment of Plaintiff only increased.

22. In or around late May or Early June 2021, Plaintiff complained to Chittenden that Masouras did not respect him, and that he was being treated less favorably than Pichardo. Chittenden then held a group meeting where all parties received counseling. Chittenden told Plaintiff, in sum and substance, "I was hard on Masouras and Pichardo so they expect everything to be prefect," and told Masouras and Pichardo, in sum and substance, "[Plaintiff] may be new, but he was hired for experience and background, I trust him"

23. Unfortunately, Masouras's excessive unwarranted criticism of Plaintiff's work did not abate after this meeting.

24. Plaintiff again complained to Chittenden in or around late June 2021, and directly informed Chittenden that he felt discriminated against based on his race (Black). Chittenden responded that he did not think Masouras was discriminating against Plaintiff, but that he would look into it.

25. In or around July 2021, Plaintiff momentarily stepped away from his computer in the early afternoon, when there was double coverage because the earlier shift was still working. Unbeknownst to Plaintiff, his phone had died during this brief 10 minutes he stepped away from his computer.

26. During the 10 minutes Plaintiff was away from his computer, Masouras tried to reach him on Slack for 10 mins. When Plaintiff plugged his cellphone in and it powered on

again, he had a frantic voicemail from his mother stating that Chittenden just called her and informed her that her son [Plaintiff] had not appeared for work for over a week. Beyond being an invasion of privacy and an over-escalation after a few minutes without communication, this was a blatant lie. Plaintiff had not missed any work that week.

27. Plaintiff called Chittenden, who apologized for making the call. Plaintiff was incredulous and told Chittenden that the phone call to his mother was disrespectful and not even accurate (as Plaintiff has missed minutes of work, not days). Chittenden tried to explain his overreaction by telling Plaintiff that when Masouras called him to report that he could not reach Plaintiff when Plaintiff was supposed to be working, he panicked because he had a friend who committed suicide.

28. Chittenden then asked Plaintiff if Plaintiff could handle his complaint "quietly" with Masouras, otherwise Chittenden will need to involve Amanda (HR). At first, Plaintiff did try to address the issue directly with Masouras. However, Masouras deflected any complaints of Plaintiff by attacking Plaintiff's performance. Masouras also criticized Plaintiff's attendance, even though Plaintiff communicated directly with Chittenden when and why he had to miss work and did not have or need to loop Masouras in.

29. Plaintiff then went back to Chittenden and explained that he felt HR's involvement was needed at this point, because Masouras's behavior had escalated from increased scrutiny of Plaintiff's work to creating a large issue when Plaintiff had been unreachable for a matter of minutes, for which Masouras was unapologetic and instead used as an opportunity to further attack Plaintiff.

30. The next day, in or around July 2021, Plaintiff spoke with Samlal in human resources at the beginning of his shift. Plaintiff complained to Samlal that Masouras was using micro aggressive tactics towards him and being over-critical and harsh in a way he was not

        towards the other non-Black employees in Plaintiff's immediate group. Additionally, Plaintiff complained that Masouras would sometimes not rotate work assignments properly, and Plaintiff was given a higher workload than his non-Black colleagues. Plaintiff specifically told Samlal that he did not view his conflicts with Masouras as a personality clash, as he had gone out of his way to be professional for months. Plaintiff told Samlal that Masouras's discriminatory behavior made him feel uncomfortable and not supported.

31. Plaintiff further pointed out to Samlal that he had repeatedly witnessed Pichardo and Eric, members on his team who were Hispanic and not Black, have positive conversations with Masouras and would make comments that indicated to Plaintiff they had some sort of personal relationship outside of work

32. Plaintiff further expanded his complaint to include Defendant CAPITAL LOGISTIC's overall attitude towards African American culture and issues, and that while other holidays were recognized, Defendant did not make any mention or social media post about Juneteenth or Kwanza. Plaintiff complained to Samlal that the work environment at Defendant was not inclusive and did not demonstrate any care or interest in the lives of African Americans.

33. Samlal responded, in sum and substance, "you knew what you signed up for," which Plaintiff took to mean he should have somehow anticipated a racially discriminatory environment at Defendant CAPITAL LOGISTICS and not been surprised or offended by it.

34. Plaintiff then told Samlal that he had to get off of the phone with her, as he had another scheduled call.

35. After Plaintiff got off the phone with Samlal and took his call, Samlal called him back.

        Plaintiff asked if it would have been considered inappropriate for him to step out for 30 minutes for a personal phone call, to which Samlal responded it would not. Samlal then added Chittenden into the phone call with Plaintiff. Samlal continued to then add Greg Ackner ("Ackner"), the Vice President of Defendant CAPITAL LOGISTICS to the call. Plaintiff was greatly confused because his initial call with Samlal that afternoon was about his complaint of race discrimination.

36. When Plaintiff voiced his confusion, Ackner responded in sum and substance, "we [Defendant] don't have to take this complaint [of race discrimination], we don't even have to deal with it if we don't want to." Samlal responded that she agreed, and told Plaintiff "we are going to terminate your employment."

37. Dumbfounded, Plaintiff asked why.

38. Chittenden told Plaintiff that he had been having attendance issues, which was false, and certainly any lateness or attendance issues were merely pretextual.

39. Samlal also said Plaintiff was being terminated because he took a personal phone call at work, which confused Plaintiff because earlier Samlal indicated taking a personal call would have been fine.

40. Plaintiff was utterly shocked at his sudden termination, as throughout the course of his employment with Defendant he had received performance bonuses, positive performance reviews, and Chittenden commended Plaintiff on how hard he worked and how happy he was with Plaintiff's Performance.

41. Plaintiff was terminated in retaliation for complaining of race discrimination.

42. The above are just some of the examples of the harassment and discrimination that Plaintiff had to endure while working for Defendant.

43. Defendant treated Plaintiff differently, solely due to his race (Black).

44. Defendant fostered and refused to remediate a hostile work environment based on Plaintiff's race (Black) which unreasonably interfered with his work.

45. Plaintiff has been unlawfully discriminated against, humiliated, degraded and belittled, and as a result, suffered a violation of his rights, emotional distress, loss of income/earnings, loss of salary, loss of benefits, special damages, legal fees/costs, loss of enjoyment of life, economic hardship, inconvenience, and emotional pain and suffering.

46. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

47. As such, Plaintiff demands punitive damages as against Defendant.

48. Plaintiff requests a jury trial on all issues to be tried.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

1. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

2. This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Defendant CAPITAL LOGISTICS.

3. Plaintiff complains of Defendant CAPITAL LOGISTICS' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's **race (Black)**.

4. Defendant engaged in unlawful employment practices by discriminating against Plaintiff because of his **race (Black)**.

## AS A SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

5. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

9

6. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

7. Defendant CAPITAL LOGISTICS engaged in unlawful employment practice prohibited by Title VII by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

8. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

9. Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

10. Defendant operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment in the form of discrimination because of his race (Black).

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

11. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

12. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

13. Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff because of his opposition to the unlawful employment practices of Defendant.

**AS A FIFTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYCHRL**

14. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

15. New York City Administrative Code §8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

16. Defendant operated a business that discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment in the form of discrimination because of his race **(Black).**

**AS A SIXTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYCHRL**

17. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

18. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

19. Defendant engaged in unlawful discriminatory practices in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, the NYSHRL, and the NYCHRL in that Defendant discriminated against Plaintiff on the basis of his race.

B. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Date**d: New York, New York**
**July 13, 2022**

                                            **PHILLIPS & ASSOCIATES,**
                                            **ATTORNEYS AT LAW, PLLC**

By:    /s/ Shawn Clark_____
       Shawn Clark, Esq.
       *Attorneys for Plaintiff*
       45 Broadway, Suite 430
       New York, New York 10006
       T: (212) 248 – 7431
       F: (212) 901 – 2107
       sclark@tpglaws.com